UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

AMBER L. THOMAS,

        Plaintiff,

v.                                                              CAUSE NO. 3:22-CV-073 DRL-MGG

KILOLO KIJAKAZI[1],
Commissioner of the Social Security
Administration,

        Defendant.

## OPINION AND ORDER

Amber Thomas appeals from the Social Security Commissioner's final judgment denying her disability insurance benefits and supplemental security income. Ms. Thomas requests remand of her claim for further consideration. Having reviewed the underlying record and the parties' arguments, the court grants Ms. Thomas's request and remands the Commissioner's decision.

## BACKGROUND

Ms. Thomas suffers from a variety of physical and mental health impairments. Ms. Thomas's severe impairments include history of migraine headaches; chronic arthralgia affecting the hands, neck, and back; chronic fatigue; respiratory impairment; obesity; anxiety disorder; depression; and attention deficit hyperactivity disorder (ADHD) [ECF 10 at 13]. She also suffers from the non-severe impairments of cholecystitis and mild systemic lupus erythematosus [*id.*].

Ms. Thomas filed a Title II application and a Title XVI application for benefits on July 26, 2019 and March 19, 2020 respectively, alleging disability beginning October 9, 2017 [*id.* 10]. Her application was denied initially on June 11, 2020, and again on reconsideration on August 27, 2020.

---

[1] Kilolo Kijakazi is now the commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 USC § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[*id.* 126, 152]. Her claims were heard by an Administrative Law Judge (ALJ) in a telephone hearing on June 8, 2021 [*id.* 39, 41]. The hearing was held via telephone because of the extraordinary circumstances presented by the COVID-19 pandemic, and Ms. Thomas agreed on the record that she did not object to proceeding in this manner [*id.* 41]. In a July 2, 2021 decision, the ALJ denied the petition because she couldn't show she was disabled under the Social Security Act [*id.* 7-21].

Ms. Thomas meets the insured status requirements of the Social Security Act through December 31, 2024 [*id.* 12]. The ALJ found that Ms. Thomas has the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with the following limitations: she could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl [*id.* 15]. She could never climb ladders, ropes, or scaffolds [*id.*]. She could frequently handle and finger bilaterally [*id.*]. She needed to avoid concentrated exposure to extreme heat, loud noise, bright or flashing lights, pulmonary irritants, including fumes, odors, dust, gases, poorly ventilated areas and chemicals, as well as hazards, including operational control of dangerous moving machinery, work at unprotected heights, and work around slippery, uneven, or moving surfaces [*id.*]. She needed to work in an indoor, temperature-controlled environment [*id.*]. Mentally, she should not work in an environment that was stringently production or quota based, and thus could not perform fast-paced assembly-line type of work, but could meet production requirements that allow her to sustain a flexible and goal-oriented pace [*id.*]. She could have only superficial interactions with supervisors, coworkers, and the general public, defined as occasional and casual contact with no prolonged conversations [*id.*]. The ALJ found that Ms. Thomas was unable to perform any past relevant work [*id.* 19], but the ALJ found that she could perform a significant number of jobs in the national economy [*id.* 20]. This decision became final when the Appeals Council denied Ms. Thomas's request for review [*id. 1*-6].

STANDARD

The court has authority to review the Council's decision under 42 U.S.C. § 405(g); however, review is bound by a strict standard. Because the Council denied review, the court evaluates the ALJ's decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is that evidence which "a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge from the evidence to conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

DISCUSSION

When considering a claimant's eligibility for disability benefits, an ALJ must apply the standard five-step analysis: (1) is the claimant currently employed; (2) is the claimant's impairment or combination of impairments severe; (3) do her impairments meet or exceed any of the specific impairments listed that the Secretary acknowledges to be so severe as to be conclusively disabling; (4) if the impairment has not been listed as conclusively disabling, given the claimant's residual function capacity, is the claimant unable to perform her former occupation; (5) is the claimant unable to perform any other work in the national economy given her age, education, and work experience. 20 C.F.R. § 404.1520; *Young v. Secretary of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof until step five, when the burden shifts to the Commissioner to prove that the claimant can perform other work in the economy. *See Young*, 957 F.2d at 389.

Ms. Thomas challenges the ALJ's conclusion that she is not totally disabled. She advances three arguments: (1) the ALJ erred in assessing subjective symptoms, (2) the ALJ failed to support the RFC with substantial evidence, and (3) the ALJ erred in relying on vocational expert testimony.

Ms. Thomas says the ALJ erred in analyzing her subjective symptoms. The law directs a two-step process to evaluate a claimant's subjective complaints. First, the ALJ determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. §§ 404.1529(a-b), 416.929(a-b); SSR 16-3p, 2016 SSR LEXIS 4, 3. Second, once the existence of such a medically determinable impairment has been established, the ALJ evaluates the intensity and persistence of the claimant's symptoms to determine the extent to which they impose work-related functional limitations. 20 C.F.R. §§ 404.1529(a), 416.929(a).

Because an ALJ sits in the best position to evaluate the credibility of a witness, the ALJ's consideration of a claimant's symptom testimony is entitled to "special deference." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and he articulates his analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002, (7th Cir. 1988) (citation omitted), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart* 458 F.3d 580, 584 (7th Cir. 2006) (citation omitted), the decision will be upheld unless it is "patently wrong," *Powers*, 207 F.3d at 435; *accord Ray v. Berryhill*, 915 F.3d 486, 490 (7th Cir. 2019) (it is a "rare case in which the claimant can overcome the 'considerable deference' [the court] afford[s] such findings unless they are 'patently wrong'") (quoting *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)); *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding the ALJ's consideration of a claimant's symptom testimony because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness").

The Code of Federal Regulations lists many factors a ALJ should consider when evaluating a claimant's symptoms, including pain. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c). These factors include

4

the objective medical evidence; the claimant's prior work record; statements made by the claimant about her symptoms; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken for symptoms; treatment for symptoms (other than medication); and any other measures used to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(1-3), 416.929(c)(1-3).

The ALJ found that Ms. Thomas's allegations concerning the intensity, persistence, and limiting effects of her symptoms weren't entirely consistent with the medical evidence and other evidence in the record [ECF 10 at 16]. The ALJ found that Ms. Thomas's complaints of fatigue, lower back pain, and hand pain weren't supported by medical evidence showing no inflammatory swelling, the continued use of medication, and a 2019 assessment for "possibly very mild lupus" [*id.*]. The ALJ also determined that, despite signs of tenderness, the record didn't indicate diminished motor strength, diminished sensation, abnormal gait, hand swelling, or problems with fine or gross manipulative maneuvers [*id.*]. The ALJ noted that Ms. Thomas repeatedly presented in no acute distress or overt signs of pain or fatigue, and she showed painless range of motion in all major muscle groups and joints [*id.* 16-17]. The ALJ then indicated that "[d]espite the general lack of corroborating objective medical signs," the ALJ considered Ms. Thomas's subjective symptoms in determining the RFC [*id.* 17].

Ms. Thomas alleges that the ALJ failed to consider her treatment side effects and her continued medication changes in analyzing her subjective symptoms. To support this argument, Ms. Thomas relies on reports that she only took half her dose of Plaquenil due to side effects, and that she was forced to switch depression medications frequently due to side effects [*id.* 617, 731, 770]. Specifically, Ms. Thomas asserts that the ALJ failed to consider the fatigue caused by her medication. The ALJ mentioned Ms. Thomas's fatigue in discussing her subjective symptoms but noted that she denied fatigue in two medical records. The ALJ did provide limitations in the RFC related to Ms.

5

Thomas's assertion that extreme heat worsens her fatigue, but the ALJ did not consider her medication side effects or their relationship to her chronic fatigue.

As an initial matter, the ALJ narrowly selected two medical records when Ms. Thomas reported no fatigue while ignoring the vast number of records that indicated fatigue was an ongoing struggle. In particular, the ALJ relied on medical records from April 2020 and March 2021 that noted she was negative for fatigue [*id.* 665, 759]—but snapshots in time. Even then, the March 2021 note explicitly discussed Ms. Thomas's ongoing struggles with her anxiety medication, which she could only take in the evening due to the medication causing fatigue [*id.* 759-60]. Moreover, multiple treatment notes from October 2017 through June 2021 indicate that Ms. Thomas struggled with fatigue, most often associated with side effects from her medications [*id.* 456, 462, 479, 619, 668, 731, 773, 775]. The law prohibits cherry-picking the few medical records that support an opinion while disregarding other relevant evidence to the contrary. *See Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009). The ALJ improperly found that Ms. Thomas's fatigue was not supported by the evidence by relying on two treatment notes, one of which does not support the ALJ's position, and passing over the myriad evidence indicating Ms. Thomas suffered from ongoing fatigue, specifically as a medication side effect.

Relatedly, the ALJ seems not to have considered the side effects of Ms. Thomas's medications in dismissing her treating physician's opinion that she would require rest on an as-needed basis due to her medication side effects. The ALJ said she "specifically denied psychotropic medication side effects" [*id.* 19]. The ALJ then cited four pages within the medical record, none of which ostensibly say Ms. Thomas denied side effects of her medications [*id.* 639, 711, 732, 760]. One of the treatment notes is from an emergency room visit for a toe injury, without discussing her medication side effects [*id. 6*39]. Another treatment note shows that Ms. Thomas reported her Cymbalta was not effective, and she was switching her medication to Effexor [*id.* 711]. Another page in the same treatment note expressly notes the side effects she suffered from Effexor, including grogginess [*id.* 731]. The

6

treatment note also states that although she should be on a higher dose of Plaquenil, the side effects prohibited her from taking the entire dosage [*id.*]. The decision erred in finding that Ms. Thomas denied side effects of her medication and in using that finding to discredit both medical opinion and subjective symptom evidence related to fatigue, particularly given its association to her lupus.

The court appreciates that the ALJ says the decision nonetheless accounted for her fatigue; but, given this discussion, the court cannot be assured that its full import has, rather than some discounted version of it, to call this harmless error. Ms. Thomas makes several other arguments regarding the RFC determination and the vocational expert's testimony; but, because the decision erred in addressing her fatigue and by not considering the side effects of Ms. Thomas's medications, the court need not address these arguments. Proper analysis of Ms. Thomas's medication side effects may alter both the RFC and the ALJ's analysis of Ms. Thomas's limitations, which may alter the vocational expert's testimony or evaluation of it. That task is left to the ALJ.

## CONCLUSION

Accordingly, the court GRANTS Ms. Thomas's request for remand and REMANDS the Commissioner's decision.

SO ORDERED.

September 16, 2022          *s/ Damon R. Leichty*
                            Judge, United States District Court